**DISABLED IN ACTION OF PENNSYLVANIA, et al.**

v.

**Samuel R. PIERCE, in his capacity as Secretary of the United States Department of Housing and Urban Development, et al.**

**Civ. A. No. 85–1035.**

United States District Court, E.D. Pennsylvania.

March 26, 1985.

---

Stephen F. Gold, Frank J. Laski, Timothy M. Cook, Public Interest Law Center of Philadelphia, Philadelphia, Pa., for plaintiffs.

James G. Sheehan, Richard A. Stout, Asst. Dist. Attys., Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

FULLAM, Judge.

The essence of plaintiffs' complaint is that on January 7, 1985, the U.S. Department of Housing and Urban Development (HUD) moved into new local quarters at 105 S. 7th Street in Philadelphia ("The Liberty Square Building"); according to plaintiffs, the newly renovated structure does not comply with federal requirements for access to the handicapped.

Defendants are the Secretary of HUD, the Administrator of this HUD region (Region III), the Acting Administrator of the General Services Administration (GSA), and the Region III GSA Administrator.

Plaintiffs Disabled in Action of Pennsylvania and Handicap Advocacy Network of Delaware, Inc., are described as organizations which have as their primary goal the enforcement of federal laws calling for "barrier-free" buildings. The three individual plaintiffs are physically handicapped persons who have full mobility through the use of wheelchairs, but who cannot gain entrance to the new HUD building in this manner. The plaintiffs charge that because of HUD's failure to provide barrier-free access, they cannot share in HUD's programs, seek employment with HUD, monitor HUD's activities, or file complaints with HUD on behalf of other disabled people.

Plaintiffs contend that the leased building, which was renovated expressly for HUD under the direction of the GSA, fails to meet federal requirements in the following ways:

1. The primary front entrance is inaccessible to wheelchair users and others with mobility disabilities (there are no

ramps; only "extremely steep and slippery steps");

2. The entrance door and other internal doors cannot be opened in a single motion. Their handles are difficult to grasp and operate with one hand; and

3. Elevator buttons are too high to be reached by a person in a wheelchair. Nor do the elevators have braille markings or direction-indicator bells for the visually impaired.

As relief, plaintiffs ask the court (1) to certify their action as a class action; (2) to declare defendants' actions to be violative of § 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794); (3) to enjoin, preliminarily and permanently, defendants from denying plaintiffs equal access; (4) to direct defendants to submit and implement a plan which outlines the steps which defendants will take in compliance; and (5) to award costs and attorneys fees to plaintiffs.

A hearing on the motion for preliminary injunction was scheduled for March 13. On the eve of the hearing, defendants submitted their response in the form of a motion to dismiss. Defendants contend (1) that plaintiffs' claim is properly founded on the Architectural Barriers Act (42 U.S.C. § 4151 et seq.) and not the Rehabilitation Act; (2) that under the Barriers Act, plaintiffs must exhaust their administrative remedies; (3) that, even assuming that plaintiffs may bring suit pursuant to § 504 of the Rehabilitation Act, they have not shown that they are "otherwise qualified" within the meaning of the Act;[1] and, finally, (4) that the Liberty Square Building, still undergoing renovations, is now in compliance with the appropriate federal standards.

█ At the preliminary injunction hearing, I sought counsel's viewpoint on the interplay between the two statutes. It was plaintiffs' counsel's view that the Rehabilitation Act provided a remedy independent of the Barriers Act. Defendants' counsel pointed to the administrative enforcement and implementation scheme in place under the Barriers Act as evidence that it was the controlling statute. In order to consider the matter further and to allow plaintiffs an opportunity to respond to the newly filed motion to dismiss, I adjourned the hearing for a period of two weeks, and stated that I would rule on the motion to dismiss in the interim; if I were to deny the motion, I would then hear evidence regarding irreparable harm.[2]

As I see it, the crucial issue to be resolved at this point in the case is whether, in the present circumstances, the Achitectural Barriers Act preempts § 504 of the Rehabilitation Act with respect to the regulation of the physical accessibility of federal buildings. If so, plaintiffs would be obligated to resort to the administrative remedies provided in the Barriers Act before seeking judicial relief; if not, plaintiffs' challenge in this court would be proper.

In 1968, Congress passed the Architectural Barriers Act, which provides that GSA, in conjunction with the Department of Health and Human Services (HHS),[3] "shall prescribe standards for the design, construction, and alteration of buildings ... to insure whenever possible that physi-

---

**1.** Section 504 provides, in pertinent part, as follows:

"No otherwise qualified handicapped individual in the United States ... shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency...." 29 U.S.C. § 794.

**2.** At the hearing, counsel expressed substantial difference of opinion as to the building's compliance with the standards for accessibility. Under either statute, plaintiffs could not be said to be injured at all if appropriate standards had been met.

**3.** Other provisions of the Barriers Act provide that the Secretary of HUD shall formulate standards for residential buildings, and that the Secretary of the Department of Defense and the U.S. Postal Service Commissioner are responsible for the promulgation of standards for buildings within their respective jurisdictions. 42 U.S.C. §§ 4153–4154a.

cally handicapped persons will have ready access to, and use of such buildings." 42 U.S.C. § 4152. A building is defined as

> any [federally owned, funded, or leased] building or facility ... the intended use for which either will require that such building or facility be accessible to the public, or may result in the employment or residence therein of physically handicapped persons....

*Id.* § 4151.

Congress later created the Architectural and Transportation Barriers Compliance Board (ATBCB) to "insure compliance with the standards prescribed ... pursuant to the Architectural Barriers Act of 1968, as amended...." 29 U.S.C. § 792(b)(1) (§ 502 of the Rehabilitation Act of 1973). Pursuant to its mandate, the ATBCB promulgated "Minimum Guidelines and Requirements for Accessible Design." 36 C.F.R. § 1190. These guidelines, as their name suggests, set the minimum allowable level of compliance for all agencies permitted to set standards under the Barriers Act. *Id.* § 1190.-4(a). In August 1984, GSA and the other empowered agencies (including HUD), adopted the Uniform Federal Accessibility Standards (UFAS), which, "wherever possible ... [are] consistent with the standards published by ... American National Standards Institute (ANSI) for general use while complying with the guidelines adopted by the ATBCB." 49 Fed.Reg. 31,-528 (Aug. 7, 1984) (to be codified at 41 C.F.R. Part 101–19). Buildings undergoing alteration on or after the effective date of these standards (July 31, 1984) are governed by them. *Id.* at 31,625.

An extensive administrative review framework exists under the Barriers Act by which "[a]ny person may submit a complaint to the A & TBCB alleging that a building or facility does not comply with applicable standards issued under the Architectural Barriers Act." 36 C.F.R. § 1150.12(a). Upon petition, the complainant may participate in the review proceedings, and may seek judicial review of a final order issued by the Board. *See* 29 U.S.C. § 792(d) (incorporating judicial review procedure of the Administrative Procedure Act (APA), 5 U.S.C. § 704); 36 F.R.D. § 1150.12(E), 1150.13, 1150.104.

The second statute at issue here, § 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794 *as amended*) provides in pertinent part:

> No otherwise qualified handicapped individual in the United States ... shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by an Executive agency.... The head of each agency shall promulgate such regulations as may be necessary to carry out the amendments to this section made by the Rehabilitation Comprehensive Services, and Developmental Disabilities Act of 1978.

29 U.S.C. § 794. The 1978 amendments added federal executive agencies and the U.S. Postal Service to the list of entities which were not to deny benefits to or discriminate against the handicapped.

The legislative history of the Rehabilitation Act reveals that one of its primary intentions was the elimination of architectural barriers; among the reasons for its passage was

> the lack of action in areas related to rehabilitation which limit a handicapped individual's ability to function in society, *e.g.,* employment discrimination, lack of housing and transportation services and architectural and transportation barriers.

S.Rep. No. 318, 93d Cong., 1st Sess., *reprinted in* 1973 *U.S.Code Cong. & Ad. News* 2076, 2078. *See also Alexander v. Choate,* ─ U.S. ─, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985) (and legislative history cited therein) (Court found that § 504 reached some cases of disparate impact, noting that "[f]or example, elimination of architectual barriers was one of the central aims of the Act ..., yet such barriers were clearly not erected with the aim or intent of excluding the handicapped." *Id.* at 719 (citations omitted)).

The § 504 coordinating regulations adopted by the Department of Justice (DOJ)[4] in 1981 provide, *inter alia*, that "[e]ach agency [defined as 'a Federal department or agency that is empowered to extend financial assistance' 28 C.F.R. § 41.-3(c)] shall issue ... a regulation to implement section 504 with respect to the programs and activities to which it provides assistance." 28 C.F.R. § 41.4(a). In implementing their regulations, agencies are to

> consult with the [ATBCB] in developing requirements for the accessibility of new facilities and alterations, as required in [28 C.F.R.] § 41.58, and shall coordinate with the Board in enforcing such requirements with respect to facilities that are subject to section 502 of the Rehabilitation Act of 1973, as amended, as well as to section 504.

*Id.* § 41.7(a).

Recently, DOJ adopted a final rule implementing its own § 504 regulations, and several other departments and agencies (including GSA, but not HUD) have jointly issued a notice of proposed rulemaking in which they proposed regulations identical to those adopted by DOJ. *See* 49 Fed.Reg. 35,724 (Sept. 11, 1984; DOJ); 49 Fed.Reg. 34,132 (Aug. 28, 1984; other agencies). These § 504 regulations provide, *inter alia*, that leased buildings are to be treated as existing buildings, and that when such buildings are altered, they must be altered to meet the requirements of the Barriers Act (hence, incorporating UFAS by reference). *See* 49 Fed.Reg. 35,729–31 (discussing 28 C.F.R. §§ 39.150, 39.151). But, in providing for enforcement of these standards, the regulations do not refer the aggrieved to the ATBCB; each of the proposing agencies and departments has suggested its own compliance procedures. *See, e.g.,* 49 Fed.Reg. 35,737 (28 C.F.R. § 39.-170). These procedures do provide, however, that the ATBCB must be notified

promptly of any complaint alleging inaccessibility of a building or facility that is subject to the Barriers Act. *See id.* § 39.-170(e). But nothing more than notification is required; the agency must still go on with its own enforcement proceeding.

And this is as Congress intended it to be. The legislative history of the 1978 Amendments to the Rehabilitation Act reveals that the proposed house bill would have required the ATBCB "to make final determinations with regard to compliance with section 504 of this Act regarding architectural ... barriers confronting handicapped individuals." H.Conf.Rep. No. 1780, 95th Cong., 2d Sess. 90, reprinted in 1978 *U.S. Code Cong. & Ad.News*, 7312, 7375, 7401.[5] The Senate amendment had made no provision for this, and the House receded. The conferees, however, expressed "the opinion that common standards should be applied by all Federal agencies and ... encourage[d] the use of the expertise that might reside on the board and rely [*sic*] upon its recommendation." *Id.* at 91, 1978 *U.S. Code Cong. & Ad.News* at 7402.

In light of the foregoing, it appears that § 504 was intended by Congress to be an independent weapon in its barrier-free arsenal. Nor does defendants' "specific controls the general" argument convince me otherwise. This was the view expressed in *Rose v. United States Postal Service,* 566 F.Supp. 367 (C.D.Cal.1983), *rev'd,* 725 F.2d 1249 (9th Cir.1984) (opinion withdrawn). Apparently, the district court in *Rose* viewed § 504 as a general statute because it proscribes more than the physical inaccessibility that is the sole subject of the Barriers Act. *See* 566 F.Supp. at 369.

This analysis, in my view, does not cut deeply enough to justify the complete excision of a protection so clearly embedded in § 504. Recently, in *Smith v. Robinson,* —— U.S. ——, 104 S.Ct. 3457, 82 L.Ed.2d

---

**4.** Coordination of the promulgation of regulations was delegated to DOJ in Executive Order No. 12,250, 45 Fed.Reg. 72,995 (Nov. 2, 1980), *reprinted in* note fol. 42 U.S.C.A. § 2000d–1 (1981)). Formerly, the role of coordinator had been given to HHS (then HEW).

**5.** This would have made sense, since many of the buildings subject to the Barriers Act were now subject to the Rehabilitation Act as well; formerly, only recipients of federal funds (which included state agencies) came within the ambit of § 504.

746 (1984), the Supreme Court considered an analogous situation—the relationship of § 504 and the Education of the Handicapped Act (EHA, 20 U.S.C. §§ 1401–1454). The latter specifically provides handicapped children with the right to a free appropriate public education.[6] In holding that an action to enforce this right must be brought under the EHA and not § 504, the Court did not rely solely on "the specific controls the general" argument, although, clearly, the EHA is much more specific on this issue than is § 504. Instead, the *Smith* Court found that Congress *intended* to preclude reliance on § 504 in these circumstances. It noted that the EHA provides an intricate statutory scheme, including requirements that states and local agencies (1) formulate individual plans for the education of each child, (2) cooperate with the parents of the children, and (3) guarantee precise procedural safeguards in carrying out the EHA. The Court also noted that while the EHA mandates affirmative action, § 504 does not. Hence, the *Smith* Court ruled that plaintiffs, who had brought suit pursuant to the EHA, § 504, and 28 U.S.C. § 1983, could not be awarded counsel fees and costs under the Rehabilitation Act.

The present case differs decisively from *Smith*. The Barriers Act features no such exacting statutory scheme, and its regulatory framework is not substantially different from that promulgated recently under § 504. Indeed, the recent regulations adopted by the Justice Department provide that a complainant has a right to request a hearing and shall be a party to the hearing. *See* 49 Fed.Reg. 35,738 (Sept. 11, 1984) (to

be codified at 28 C.F.R. §§ 39.170(h)(4), 39.-170(k)(2). The regulations of the ATBCB, however, provide that a complainant is not a party to a hearing, but may petition as of right to participate in it. 36 C.F.R. § 1150.-13(a). Moreover, it does not appear that the Barriers Act mandates anything that § 504 does not. Although there is a paucity of case law on the point, it is clear from the language of the act that it is not an absolute guarantee: it provides that the GSA must "insure *whenever possible* that physically handicapped persons will have access to" the buildings under its control. 42 U.S.C. § 4152 (emphasis added).

Hence, in view of the foregoing, and bearing in mind Congress' clearly expressed intent that § 504 be used to eradicate architectural barriers without initial referral to the ATBCB, I see no reason to force plaintiffs to choose one statute over the other. So long as they allege, as they have, that their inaccessibility to HUD activities or programs[7] is the result of improper physical barriers, plaintiffs may maintain an action pursuant to § 504.[8]

Since neither GSA nor HUD has adopted a final set of regulations to implement § 504,[9] plaintiffs cannot be asked to exhaust administrative remedies. *Cf. Lloyd v. Regional Transportation Authority*, 548 F.2d 1277 (7th Cir.1977) (Plaintiffs sued pursuant to, *inter alia*, § 504 and the Barriers Act. The court noted that "until effective enforcement regulations are promulgated, Section 504 in its present incarnation as an independent cause of action should not be subjected to the doctrine of exhaustion.... But assuming a meaningful administrative exhaustion mechanism,

---

**6.** But the EHA, unlike the Rehabilitation Act, does not permit an award of costs and attorneys fees. *See* 29 U.S.C. § 505(b). This conflict exists in the present case as well, since the Barriers Act has no such provision.

**7.** Defendants' contention that plaintiffs have not established that they are "otherwise qualified" for HUD's programs and activities is thus premature. It is sufficient at the pleading stage for plaintiffs to make potentially meritorious allegations of preclusion from HUD's programs or activities; whether such allegations are capable of being proven, however, remains an open question.

**8.** Defendants do not dispute that plaintiffs may maintain a private right of action pursuant to § 504. *See NAACP v. Medical Center, Inc.*, 599 F.2d 1247, 1258 (3d Cir.1979).

**9.** Plaintiffs inform the court that HUD and GSA are also currently being sued in federal court in California for this apparent failure to act. *Williams v. United States*, CV 80–5368–WPG (C.D. Cal.). But, as I read plaintiffs' Complaint, they do not here challenge HUD's failure to promulgate regulations.

# 316

the private cause of action under Section 504 should be limited to *a posteriori* judicial review." *Id.* at 1286 n. 29).

■ Finally, since it is clear to me that the motion to dismiss should be denied, I must determine, in the absence of guiding regulations, what standards control the accessibility of the Liberty Square Building. Plaintiffs argue that the standards of the American National Standards Institute (ANSI) control. Their argument is, essentially, that HHS, formerly the § 504 coordinating agency, adopted ANSI standards for physical accessibility (*see* 45 C.F.R. § 84.23) and that, as the Supreme Court noted in *Consolidated Rail Corp. v. Darrone,* —— U.S. ——, 104 S.Ct. 1248, 79 L.Ed.2d 568 (1984), Congress intended to codify those regulations in adopting the 1978 amendments to the Rehabilitation Act. *Id.* at 1254–55 & nn. 15 & 16 (citing S.Rep. No. 890, 95 Cong., 2d Sess. 19 (1978)). Hence, they contend ANSI standards are statutorily mandated.

I disagree. The portion of the legislative history cited by plaintiffs and by the *Darrone* Court is actually a review of amended § 505(a)(2) of the Rehabilitation Act, not § 504. Section 505(a)(2) provides:

> The remedies, procedures, and rights set forth in Title VI of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000d et seq.] shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section 794 [§ 504] of this title.

29 U.S.C. § 794a(a)(2). It was regarding this subsection that the Committee remarked:

> It is the committee's understanding that the regulations promulgated by the Department of Health, Education, and Welfare with respect to the procedures, remedies, and rights under Section 504 conform with those promulgated under Title VI. Thus, the amendment codifies existing practice as a specific statutory requirement.

S.Rep. No. 890, *supra,* at 19.

The *Darrone* Court noted that this passage referred to the HHS regulations which incorporated Title VI complaint and enforcement procedures. 104 S.Ct. at 1255 n. 16. Hence, this language does not apply to HHS regulations dealing with the subjective content of § 504 rights (such as the manner in which government facilities are to made accessible to the handicapped). Moreover, the present coordinating agency has not prescribed that ANSI standards must govern; instead, DOJ has incorporated the Barriers Act standard. In light of the fact that defendants' agencies, HUD and GSA, have adopted the Uniform Federal Accessibility Standards (UFAS) as the governing standard under the Barriers Act, and the fact that GSA has proposed § 504 regulations which incorporate by reference the Barriers Act standards, I conclude that UFAS controls the present situation. In any event, it appears that UFAS and ANSI are generally consistent (*see* p. 313 *supra* ); thus, I perceive no prejudice to plaintiffs in the application of UFAS.

In view of the foregoing determination, the plaintiffs will be expected to prepare, for submission at the upcoming preliminary injunction hearing, a brief index collating each instance of alleged inaccessibility with the appropriate UFAS standard.