558 A.2d 121

Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing, Appellant *v.* Cheryl Lynn Brown, Appellee.

Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing, Appellant *v.* David A. Clayton, Sr., Appellee.

Commonwealth of Pennsylvania, Department of Transportation, Appellant *v.* Mark D. Boros, Appellee.

Commonwealth of Pennsylvania, Department of Transportation, Bureau of Traffic Safety, Appellant *v.* Paul E. Humbert, Sr., Appellee.

Submitted on briefs July 12, 1988, April 5, 1988, September 20, 1988 and October 25, 1988, to Judges CRAIG and PALLADINO, and Senior Judge BARBIERI, sitting as a panel of three.

*Melissa K. Dively,* Assistant Counsel, with her, *Robert C. Bell,* Assistant Counsel, *Harold H. Cramer,* Assistant Chief Counsel, and *John L. Heaton,* Chief Counsel, for appellant.

*Thomas O. Vreeland, McCune and Vreeland,* for appellee, Cheryl Lynn Brown.

*Thomas J. Graham,* for appellee, David A. Clayton, Sr.

*Thomas B. Kostolansky,* for appellee, Mark D. Boros.

*Ewing D. Newcomer, Newcomer & Newcomer,* for appellee, Paul E. Humbert.

OPINION BY JUDGE CRAIG, April 25, 1989:

These four cases involve review of the Pennsylvania Department of Transportation's (DOT) recall of the appellees' motor vehicle and school bus drivers' licenses pursuant to department regulations, because the drivers suffer from certain chronic conditions such as epilepsy and heart disease. The key issue is whether, after DOT has shown the existence of a specified diagnosis of one of these conditions, the driver may, by way of an affirmative defense, look to the Federal Rehabilitation Act (Act) to challenge DOT's action.

Three of these cases involve persons who have experienced epileptic seizures. Those cases are before us on appeal from decisions of the Court of Common Pleas of Washington County which sustained the drivers' appeals from DOT's recalls of their licenses. In the fourth case, which involves a school bus driver whose license DOT recalled because of the driver's heart condition, we consider DOT's appeal of a decision by the Court of Common Pleas of Fayette County which remanded the case to

DOT for additional testimony in light of our first *Stober*[1] decision. (*Stober I*).

Although none of these drivers raised the defense of the Rehabilitation Act, the judges in the three seizure cases upheld similar affirmative defenses by concluding that DOT's applicable regulations were unreasonable, and in Humbert's case the trial court judge specifically recognized that the Rehabilitation Act was applicable.

In these cases neither the trial judge nor the motorists had the benefit of our decisions in *Stober*, in which this court, upon consideration of an appeal by a motorist whose school bus driver's license had been recalled because of his heart condition, accepted the affirmative defense of the Rehabilitation Act raised by counsel.

Unable to ignore the import of our *Stober* decisions, this court, by order, invited the parties to submit supplemental briefs, asking specifically that the parties examine a potential affirmative defense in the context of the Rehabilitation Act. Having received responses from TWO of the parties and DOT, we may now consider the applicability of the Act to the cases before us.

Section 504 of the Rehabilitation Act provides:

**Nondiscrimination under Federal grants and programs; promulgation of rules and regulations.**

No otherwise qualified individuals with handicaps in the United States, as defined in section 7(8) [29 U.S.C. §706(8)], shall, solely by reason of his handicap, be excluded from participation in, be denied benefits of, or be subjected to discrimination under any program or activity receiving Fed-

---

[1] *In re Stober*, No. 1455 C.D. 1984, filed April 16, 1987, slip. op., 524 A.2d 535 (1987), *confirmed by, In re Stober*, 119 Pa.Commonwealth Ct. 156, 546 A.2d 155 (1988). (*Stober II*).

eral financial assistance. . . . Federal Rehabilitation Act §504, 29 U.S.C. §794 (1987).

The Act defines an individual with handicaps as:

[A]ny person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such impairment, or (iii) is regarded as having such an impairment. Federal Rehabilitation Act §7, 29 U.S.C. §706(7)(B) (1987).

In *Stober I* this court accepted the driver's argument that the Act applied in his case because he was a handicapped individual (he had a heart attack), and because DOT had recalled his school bus driver's license solely because of that handicap, without establishing that his condition made him an unsafe driver. We remanded the case to the court of common pleas to resolve the question of (1) whether there was an appreciable risk that Stober would not be able to secure the safety of his passengers; and, (2) whether requiring the Department to accommodate individuals like Mr. Stober through medical screening and tests would place an undue burden on DOT.

DOT petitioned for reconsideration and reargument of *Stober I*. Judge BARRY, writing for the court in *Stober II*, confirmed that decision in *Stober II*, holding that DOT had failed to meet its burden of proving that Stober was incompetent to drive school buses and that the Act applied to DOT regulations regarding school bus drivers.

A review of the specific facts of each of the cases now before us is helpful to our analysis. The facts in Humbert's case are obviously similar to those in *Stober*. Humbert's physician, in response to a DOT inquiry form, stated that his patient had a heart condition, but concluded that, in his opinion, Humbert was physically and mentally competent to operate a motor vehicle. The physician added that the patient's condition was under control through

control through medication. At the de novo trial, however, Humbert's counsel did not offer any other medical evidence of Humbert's competence to drive.

In the cases of Boros, Clayton and Brown, DOT recalled those parties' licenses because their physicians, in compliance with DOT regulations, completed and submitted to DOT a "Convulsive Disorder" form indicating that the patient had suffered a seizure. However, the physicians also indicated on those forms that the patients were taking medication to prevent a future seizure, and that, in their opinion, the drivers were mentally and physically competent to operate a motor vehicle.

Although *Stober* and Humbert involve the recall of a license necessary for employment, while the recall of Clayton's, Boros', and Brown's licenses do not appear to affect their employment opportunities, we believe that this distinction does not affect the applicability of the Act.

The Act, which was modeled on civil rights legislation, appears to reflect a legislative intent to eradicate long standing prejudices against handicapped individuals, and to offer handicapped individuals an opportunity to pursue not only employment goals, but educational and recreational goals as well. *Paralyzed Veterans of America v. Civil Aeronautics Board,* 752 F.2d 694 (App. D.C. 1985), *rev'd on other grounds, United States Department of Transportation v. Paralyzed Veterans of America,* 477 U.S. 597, 91 L.Ed.2d 494, 106 S.Ct. 2705 (1986). *(See also, Disabled in Action v. Pierce,* 606 F. Supp. 310 (E.D. Pa. 1985) in which the Federal District court interpreted §504 as a means of eradicating architectural barriers to handicapped persons.)

DOT argues that the common pleas court is not the appropriate forum to consider the applicability of the Act. Apparently DOT is relying on the fact that most motor vehicle proceedings before the common pleas court generally involve only questions concerning matters such as

traffic violations and accumulation of points for violation of the traffic laws, rather than questions regarding the competency of a driver to operate a motor vehicle. However, because the Vehicle Code[2] places license cases in the court of common pleas, that court is the proper initial forum in a revocation or recall action. Thus, the court of common pleas may recognize the affirmative defense of the Rehabilitation Act as it would any other affirmative defense.

The Vehicle Code clearly provides a driver with the right to a statutory appeal to the common pleas court as a complete forum.[3] If the Rehabilitation Act bars DOT from absolute and unqualified application of department regulations in such matters, the courts cannot require parties subject to DOT sanctions to pursue a bifurcated process.

Recognizing the trial court's jurisdiction in consideration of our *Stober* decisions, we must remand these cases for certain determinations. In all of these cases the department carries the burden of proving that these drivers are not competent to drive. As in *Stober*, DOT has not met that burden when it merely introduces, as evidence of incompetence, the physicians' responses to DOT questionnaires which merely indicate a patient's past medical condition. Therefore, in accordance with *Stober*, the trial court must make findings of fact concerning (1) whether there is an appreciable risk that the drivers are not competent to drive, or in the case of Humbert, whether he is capable of safely transporting his passengers; and, (2) whether an accommodation of these individuals, and those similarly situated, would unduly burden DOT.

---

[2] 75 Pa. C. S. §§101-9701.

[3] 75 Pa. C. S. §1550.

ORDER IN 419, 969, AND 2862 C.D. 1987 AND 530 C.D. 1988

Now, April 25, 1989, the decisions of the Court of Common Pleas of Washington County, at Nos. 87-3644, 5945 of 1986 and 6881 of 1986, and the decision of the Court of Common Pleas of Fayette County at No. 965 G.D. 1987 are remanded to said Courts for factual determinations as directed in this opinion.

Jurisdiction relinquished.