630 A.2d 927

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant,**

v.

**Cheryl Lynn BROWN, Appellee.**

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant,**

v.

**David A. CLAYTON, Sr., Appellee.**

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, Appellant,**

v.

**Mark D. BOROS, Appellee.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 18, 1993.

Decided Aug. 17, 1993.

Melissa K. Dively, Robert C. Bell and David R. White, Asst. Counsels, and Harold H. Cramer, Asst. Chief Counsel, for appellant.

Thomas J. Graham, Thomas O. Vreeland and Thomas B. Kostolansky, for appellees.

Before CRAIG, President Judge, and FRIEDMAN, J., and SILVESTRI, Senior Judge.

CRAIG, President Judge.

In these consolidated cases, the Pennsylvania Department of Transportation appeals three orders of the Court of Common Pleas of Washington County that sustained appeals by the three licensees, Cheryl Lynn Brown, Mark D. Boros and David A. Clayton from the department's suspension of their operating privileges under section 1519(c) of the Vehicle Code, 75 Pa.C.S. § 1519(c), which provides:

> The Department shall recall the operating privileges of any person whose incompetency has been established under the provisions of this chapter. The recall shall be for an indefinite period until satisfactory evidence is presented to the Department in accordance with regulations to establish that such person is competent to drive a motor vehicle.

The department adopted regulations pursuant to section 1519(c) which provide in pertinent part:

> (a) *General.* A person suffering from epilepsy may not drive unless their personal physician reports that the person has been free from seizure for a period of at least one year immediately preceding, with or without medication.
>
> .     .     .     .     .
>
> (c) *Waiver.* Waiver of the freedom from seizure requirement may be made upon specific recommendation by a licensed physician who specializes in neurology or neurosurgery if:
>
> > (1) A strictly nocturnal pattern of the condition has been established over a period of at least 3 years immediately preceding, with or without medication; or
> >
> > (2) A specific prolonged aura accompanied by sufficient warning has been established over a period of at least 5 years immediately preceding, with or without medication.

67 Pa.Code § 83.4(a), (c).

Thus, the regulation creates an irrebuttable presumption that a person who has had one seizure is incompetent to drive

for a period of at least one year after the seizure occurs. The regulation makes irrelevant any evidence a licensee could present regarding possible treatment that might rebut the irrebuttable presumption of incompetence. The only exceptions to the regulation involve licensees who have a chronicled history of certain kinds of seizures, specifically nocturnal seizures and ones which have warning symptoms, that spans three and five years respectively.

## FACTS

### No. 419 C.D. 1987—Cheryl Lynn Brown

Licensee Brown suffered an epileptic seizure on July 17, 1986. Her last previous seizure had occurred in 1975. Following the seizure in 1975, licensee Brown saw Dr. Lowell G. Lubic, who prescribed Dilantin, which the licensee took until 1981. After the seizure in July 1986, Dr. Lubic prescribed 90 milligrams of Phenobarbital daily. The trial judge indicated that the licensee had no seizure between the time of the July 1986 seizure and the trial court's hearing on January 20, 1987.

### No. 969 C.D. 1987

Licensee Clayton suffered only a single epileptic seizure on September 5, 1986. The licensee sought the help of Dr. H.J. Silvis, who prescribed Dilantin. The licensee continues to take that medication, and the trial judge noted that the licensee had no seizures between his September 1986 seizure and the date of the trial court's hearing on March 31, 1987.

### No. 2862 C.D. 1987

Licensee Boros was involved in an automobile accident on January 11, 1987. Immediately after the accident, the licensee blacked out while attempting to get out of his car. The licensee remembered nothing of the incident, but while recovering in the hospital from the injuries he sustained in the accident, he had a series of seizures from January 11, 1987 through January 21, 1987. The licensee had never had a seizure before the accident. Dr. Blume prescribed 400 milligrams of Dilantin per day. The licensee had no seizures

between January 21, 1987 and the date of the trial court's hearing on September 22, 1987.

As indicated above, the trial judge sustained the appeals of all three licensees, basing his decision on an opinion by Judge Rodgers of the Court of Common Pleas of Washington County in *In Re: Appeal of Charles R. Wiseman,* 32 Pa.D. & C.3d 294 (No. 213 May Term, 1983, filed August 1, 1983), in which Judge Rodgers concluded that the regulations upon which the department based its suspensions, 62 Pa.Code § 83.4, are substantively unreasonable and offensive to epileptic licensees' procedural due process rights.

The department appealed the three present decisions to this court, which concluded that section 504 of the federal Rehabilitation Act of 1973, 29 U.S.C. § 794, could apply, and remanded the cases to the trial court for evidentiary hearings on that issue. *Department of Transportation v. Brown,* 125 Pa. Commonwealth Ct. 372, 558 A.2d 121 (1989). The department appealed that decision to the Pennsylvania Supreme Court, which vacated this court's decision, concluding that the licensees had not raised the federal issue and therefore it was not properly before this court. The Supreme Court remanded the cases to this court for consideration of the issues the department had raised before this court in these appeals. *Department of Transportation v. Boros,* 533 Pa. 214, 620 A.2d 1139 (1993).

## ISSUES

1. Did the trial court err in substituting its discretion for the legislatively mandated procedure of the department when the court found that the licensees met the physical criteria relating to the licensing of drivers?

2. Does 67 Pa. Code § 83.4 violate due process (1) by creating an irrebuttable presumption that the licensees, who have suffered seizures, are incompetent to operate a motor vehicle or (2) because it is unreasonable.

### 1.

We will first address the due process issue of whether the regulation is unconstitutional as creating an irrebuttable presumption of incompetence to operate a motor vehicle for a period of one year following the occurrence of a seizure.

The trial court, in following the opinion in *Wiseman*, apparently agreed with the conclusion that the regulations, by creating an irrebuttable presumption of incompetence to operate a motor vehicle, violated the procedural due process doctrine that, where substantial rights are involved, a litigant must be afforded a meaningful evidentiary hearing.

■ However, until 1989, the decisions of the United States Supreme Court which discuss the "irrebuttable presumption doctrine" did not definitively state whether the doctrine rests upon substantive or procedural due process principles. The difference is significant of course, because, under a substantive due process analysis, where a constitutional interest is not fundamental, the state need only have a rational basis to support a legislative or regulatory pronouncement that affects the interest. That standard is not difficult to meet.

Thus, for example, in *Department of Transportation v. Liberati*, 80 Pa. Commonwealth Ct. 519, 472 A.2d 741 (1984), a case upon which the department relies, this court, citing a decision of the Court of Appeals for the Third Circuit, *Malmed v. Thornburgh*, 621 F.2d 565 (3rd Cir.1980), concluded that a regulation which created an irrebuttable presumption—that the use of telescopic lenses was not acceptable for the purpose of meeting the visual acuity requirements for a driver's license—did not violate *substantive* due process, because the regulation bore a rational relationship to a legitimate state interest.

The court of appeals in *Malmed* concluded that the "irrebuttable presumption doctrine" created by the United States Supreme Court in a line of cases beginning in 1971, was based on concepts of substantive due process, rather than procedural due process.

In *Michael H. v. Gerald D.*, 491 U.S. 110, 109 S.Ct. 2333, 105 L.Ed.2d 91 (1989), a case involving a California statute which created a conclusive presumption that a child born to a married woman living with her husband, who is not sterile or impotent, is presumed to be the child of the marriage, Justice Scalia, in a plurality opinion, discussed earlier Supreme Court decisions involving the irrebuttable presumption doctrine as follows:

> Those holdings did not, however, rest upon *procedural* due process. A conclusive presumption does, of course, foreclose the person against whom it is involved from demonstrating, in a particularized proceeding, that applying the presumption to him will in fact not further the governmental policy the presumption is designed to effectuate. But the same can be said of any legal rule that establishes general classifications, whether framed in terms of a presumption or not. 491 U.S. at 120–21, 109 S.Ct. at 2340.

Justice Scalia also addressed the appellant's substantive due process argument, with which he disagreed, and upheld the conclusive presumption the statutory provision created.

Although Justice Scalia garnered the agreement of an adequate number of justices with regard to his result in the case, a total of five justices disagreed with his conclusion that irrebuttable presumptions affect substantive rather than procedural due process rights.

Justice Stevens, in his concurring opinion, expressed the view that the interest that was at stake was of sufficient constitutional importance as to give the appellant "an opportunity to convince a trial judge" that his natural child's best interests would be served by granting the father visitation rights. 491 U.S. at 134, 109 S.Ct. at 2348.

Justice Brennan dissented, with Justices Marshall and Blackmun, joining him. In that dissent, Justice Brennan noted that "five justices agree[1] that the flaw inherent in a

1. Justice White, who wrote a separate dissenting opinion, also indicated his belief that irrebuttable presumptions affect procedural due process rather than substantive due process concerns.

conclusive presumption that terminates a constitutionally protected interest without any hearing whatsoever is a *procedural* one." 491 U.S. at 136, 109 S.Ct. at 2349. Justice Brennan faulted the plurality's reasoning because, in discerning the constitutional liberty interest at issue, the plurality opinion implicitly allowed the interest of the *state,* to terminate a parent-child relationship, and thus, to affect the definition of an otherwise constitutionally protected liberty interest of the natural father. Justice Brennan noted that, under the established standard of review, courts should first determine whether a person has a constitutionally protected interest, and *then* "consider the state's interest in limiting the extent of the procedures that will attend the deprivation of that interest." 491 U.S. at 145, 109 S.Ct. at 2354.

As Justice Brennan noted, "[t]he point of procedural due process is to give the litigant a fair chance at prevailing, not to ensure a particular substantive outcome." 491 U.S. at 147, 109 S.Ct. at 2355. Thus, in *Michael H.,* Justice Brennan concluded that, where a state refuses to provide a hearing on a particular issue, the proper analysis under procedural due process concepts is to consider the state's "interest in curtailing the procedures accompanying the termination of a constitutionally protected interest." 491 U.S. at 148, 109 S.Ct. at 2355.

■ Hence, if the privilege to operate a motor vehicle is protected under the constitution, this court must consider whether the Commonwealth's interest in limiting the licensees' right to establish their competency in a hearing in which they could rebut the regulatory presumption, outweighs their constitutionally protected interest.

This court has recognized that operating privileges constitute a constitutionally protected property interest which the state may not terminate without providing procedural due process protection. *Commonwealth, Department of Transportation v. Quinlan,* 47 Pa. Commonwealth Ct. 214, 408 A.2d 173 (1979).

In *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971), the Supreme Court addressed a licensee's challenge to a statute that provided for the suspension of operating privileges of uninsured motorists who are involved in an accident unless the motorist posts security in an amount equal to damages claimed by other persons who are injured in the accident. The court stated that the "[s]uspension of issued licenses ... involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment." 402 U.S. at 539, 91 S.Ct. at 1589.

In this case, the licensees did in fact have a hearing before the trial court; however, although the licensees had a forum in which to assert a challenge to the suspension of their privileges, the regulation, by creating a presumption of incompetence, denied them an opportunity to present evidence rebutting the presumption of incompetence. Thus, we must consider whether that curtailment of their procedural rights is justified by some paramount state justification.

This court's conclusion is that the state's justification does not outweigh the licensees' protected interest. The only conceivable state justification for denying such licensees an opportunity to convince a judge that they are competent to operate a motor vehicle despite the occurrence of a single seizure is the time and expense associated with litigating the matter. That concern does not overcome the interest of the licensees in their operating privileges.

In *Bell*, the Supreme Court concluded that the state had proffered no interest that outweighed the licensee's interest in his operating privileges. The court noted that (1) where there was no possibility that an uninsured motorist would have a judgment rendered against him, the state's interest in protecting a claimant from the possibility of an unrecoverable judgment did not outweigh the licensees' interest and (2) the added expense to the state of the expanded hearing also did not justify the procedural limitation. 402 U.S. at 540–1, 91 S.Ct. at 1590–91. The court quoted *Goldberg v. Kelly*, 397 U.S. 254

at 261, 90 S.Ct. 1011 at 1017, 25 L.Ed.2d 287 (1970), as follows: "While the problem of additional expense must be kept in mind, it does not justify denying a hearing meeting the ordinary standards of due process." *Id.*

Although *Bell* could be distinguished from this case in that the primary interest the state sought to foster could be characterized as purely pecuniary, the Commonwealth's interest here in protecting the physical well-being of the public is outweighed by the licensees' interest, in light of the minimal added burden to the Commonwealth in having to litigate the competency issue with respect to epileptic drivers. The Commonwealth's justification is not sufficient when balanced against the interests of licensees who have suffered a single seizure and who could establish at a hearing, with the evidence of a medical expert, that they are not a danger to other motorists and are not incompetent to operate a motor vehicle.

As the Supreme Court in *Bell* noted in considering the requirements of procedural due process, "It is a proposition which hardly seems to need explication that a hearing which excludes consideration of an element essential to the decision whether licenses of the nature here involved shall not be suspended does not meet this [procedural due process] standard." 402 U.S. at 542, 91 S.Ct. at 1591.

2.

Because of our conclusion that the regulation violates procedural due process by creating an impermissible irrebuttable presumption, we need not address the question of whether the trial court abused its discretion.

Accordingly, the decisions of Judge John F. Bell are affirmed.

## ORDER

NOW, August 17, 1993, the orders of the Court of Common Pleas of Washington County at (1) No. 5945 of 1986, dated

January 30, 1987, (2) No. 6881 of 1986, dated April 6, 1987, and (3) No. 87–3644, dated November 17, 1987, are affirmed.